[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were intermarried at Bridgeport, Connecticut on September 7, 1991. They have resided continuously in Connecticut since the date of their marriage. There are two minor children, issue of this marriage, to wit: Julian Landock, born August 31, CT Page 7938 1992; and Shannon Landock, born October 6, 1994. This contested dissolution action was tried before the court on June 4 and June 11, 1999. The evidence presented at trial established clearly that the marriage has broken down irretrievably.
The court has considered the criteria spelled out in §§46b-56, 46b-81, 46b-82, 46b-84 and46b-62 of the Connecticut General Statutes in reaching its decision as reflected in the orders that follow in this memorandum.
The husband and wife married in September 1991 and separated in July 1998. The wife previously worked as a claims representative for Massachusetts Mutual earning $26,000 per year. Prior to the marriage, the plaintiff was employed as a senior claims representative with Aetna Life Casualty for 8 1/2 years at a salary of $26,000. She is a college graduate from Sacred Heart University. After the birth of her first child, she stopped working and has not resumed employment except for part time work watching children and doing limited domestic cleaning.
The major issue in this dissolution is the question of fault for the breakup of the marriage and the resulting awards involving alimony, custody of the minor children, child support and disposition of the real estate owned by the parties including the marital residence. The plaintiff wife is seeking title to the marital residence, claiming she has the ability to maintain it. Further, she feels that it would be in the best interests of the children to remain in the marital dwelling, the present school system and neighborhood.
The defendant husband is employed at Hubbell, Inc., and he has a take-home pay of slightly under $500 per week.
The plaintiff testified that the defendant frequently had temper tantrums and would become angry. Before their separation, his drinking escalated as well as his fits of anger. She also described episodes of physical violence. Although she testified he promised never hit her again, he later pushed her into the wall and grabbed her by the neck in an attempt to choke her. She testified he threatened to kill her; constantly followed her; and that she is afraid of him.
The plaintiff stated she tried to save the marriage by seeking counseling and that when she told him, he became upset CT Page 7939 and harassed her. She also tried to persuade him to go to counseling and, when he refused and threatened her, she stopped going to counseling herself.
In September, the husband was arrested after a dinner engagement. She claimed he had been drinking, argued with her and, while in the car, he grabbed her by the arm, slammed her head and restrained her. As a result, when the police were called, he was arrested and a full protective order was issued.
In cross-examination by defendant's counsel, it was brought out that the defendant is the primary wage earner while the plaintiff takes care of the household and related expenses. The defendant had turned over his pay to her and she paid all the bills. Furthermore, the plaintiff admits that the defendant did things around the house, such as cooking, playing with the children and other shared activities.
Since their separation, the children speak with the defendant father every day and he sees them on the weekend and they love their father. At this time, the son is in school full time from 8:15 a.m. to 3:30 p. m. while the younger daughter is in kindergarten.
The plaintiff admitted that prior to January 1998, she refused to have sex with her husband because he was abusive to her. During cross examination, it was brought out through the wife's testimony that the husband suspected of her having an affair with a male neighbor.
The defendant testified that he wanted a reconciliation; that he turned over his paycheck to her; helped her cook and clean the house; and that he finished the family room with her father. The defendant also testified that his opportunity for overtime has lessened due to work at Hubbell being transferred to Puerto Rico, although his earlier financial affidavits indicate he was earning more overtime even after he testified that he had not received this extra overtime. He also testified that their difficulties were occasioned by the wife spending time with a male neighbor and that she said she didn't love him. He claims on one occasion he overheard the wife having phone sex with this individual and, when he confronted her, she denied it but later admitted talking to the neighbor and asked him not to tell anybody about the phone conversation. He also testified he never acted in a hostile fashion toward the wife or that he ever physically abused her but CT Page 7940 simply laid his hands on her in an attempt to restrain her when she was striking him and had become hysterical.
With respect to the marital residence, it was purchased for approximately $170,000, of which $30,000 came from her parents and $10,000 from his parents toward the down payment. The current value of this dwelling is approximately $180,000 and the balance on the mortgage is $126,000.
With respect to the condominium presently occupied by the husband, it has an approximate value of $95,000 and a mortgage balance of $64,000.
The parties have not been able to resolve their differences and the court is inclined to accept the wife's testimony about the husband's physical abuse. Accordingly, although both parties have contributed to the breakdown of the marriage, the court assesses the greater fault to the defendant husband.
The following orders shall enter:
CUSTODY AND VISITATION
 1. There shall be joint custody of the minor children with physical custody to the plaintiff. The plaintiff shall have the final decision on all matters relating to the health, education and welfare of the minor children.
 2. The defendant shall be entitled to reasonable, flexible and liberal visitation to include but not be limited to the following:
A. Each Saturday from one p. m. until seven p. m.
 B. One weekend each month from Friday at six p. m. until Sunday at seven p. m.
C. Every Father's Day from ten a.m. until six p. m.
 D. Each Thanksgiving from five p. m. until the next Friday at six p. m. (If this falls on his regularly scheduled weekend, the children shall remain with the father until Sunday at seven p. m.)
 E. Each Christmas Day from one p. m. until eight p. m. CT Page 7941 (Christmas Eve and Christmas morning shall be with the plaintiff mother.)
F. Easter Sunday from ten a.m. until six p. m.
 G. Memorial Day from ten a.m. until six p. m. during even numbered years.
 H. Fourth of July from ten a.m. until six p. m. during the odd numbered years.
 I. The defendant father shall not consume alcohol or be under the influence of alcohol while the children are in his care.
 J. The defendant father shall not transport the minor children in his two-seater vehicle at the same time. They must each have their own seat and be secured.
CHILD SUPPORT
 1. The defendant shall pay to the plaintiff as child support for the minor children the sum of $200 per week, in accordance with the child support guidelines.
 2. Said support order shall be secured by an immediate wage withholding order.
MEDICAL INSURANCE COVERAGE
 1. The defendant shall continue to provide medical coverage as is available at his place of employment for the benefit of the minor children. If the plaintiff is gainfully employed and health insurance benefits are available, then both parties shall provide health insurance for the benefit of the minor children as is available to each at reasonable cost through their respective places of employment. The plaintiff shall have the benefit of the provisions § 46-84(e) of the Connecticut General Statutes.
 2. The plaintiff shall be responsible for 63% and the defendant shall be responsible for 27% of the minor children's uninsured and unreimbursed medical or dental expenses.
CT Page 7942REAL ESTATE
The husband shall convey and transfer to the wife any and all interest he has in the marital residence located at 22 Briarwood Drive, Seymour, Connecticut. The plaintiff shall be responsible for the maintenance and expenses of said residence and shall indemnify and hold the defendant husband harmless with respect to any mortgage and costs associated with said residence.
The wife shall convey and transfer to the husband any and all interest she has to the property known as 31 Commodore Commons, Derby, Connecticut. The defendant shall be responsible for the maintenance and expenses of said condominium and shall indemnify and hold the plaintiff wife harmless with respect to any mortgage and costs associated with said condominium.
PERSONAL PROPERTY
 1. The plaintiff shall be entitled to the Webster checking account, the 1992 Honda Civic and all of her personal belongings and jewelry and all of the household furniture and furnishings at 22 Briarwood Drive, Seymour, Connecticut.
 2. The defendant shall be entitled to the 1988 Honda automobile, all of his personal belongings including all of the furniture and furnishings at 31 Commodore Commons, Derby, Connecticut.
DEBTS
The plaintiff shall be responsible for $3,000 of the debt to Capitol One MasterCard and the defendant shall be responsible for $1,000 of said MasterCard debt, payable at the rate of $10.00 per week through the immediate wage execution. Such payment shall be considered as support and non-dischargeable in bankruptcy.
The defendant husband shall be responsible for the debt to First Card listed on his financial affidavit and shall indemnify and hold the plaintiff harmless from said debt.
ALIMONY
The defendant shall pay to the plaintiff as periodic alimony the sum of $55.00 per week for a period of four years, CT Page 7943 nonmodifiable as to duration except in the event of death or remarriage of the plaintiff, or her cohabitation as defined by statute or the death of the defendant, whichever event shall first occur.
Although the plaintiff presently spends most of her time at home, she has certain vocational skills and should, within three years of the youngest child attending school on a full time basis, be able to obtain full time employment.
COBRA COVERAGE
The defendant shall provide medical coverage for the benefit of the plaintiff at his sole cost and expense as is available through his employment for the maximum duration allowed under COBRA or until the plaintiff shall remarry or have such coverage available to her through employment, whichever shall occur first.
PENSION
The plaintiff shall receive one-half of any amount by which the defendant's retirement plan increased during the period of this marriage until July 31, 1998. The defendant shall cooperate in providing documentation for this purpose. The transfer shall be by cash payment or QDRO at the discretion of the defendant. The remainder of said retirement plan shall be the sole property of the defendant and the plaintiff shall have no claim thereto.
LIFE INSURANCE
The defendant shall continue to maintain the $130,000 life insurance policy as set forth on his financial affidavit, with the minor children as beneficiaries thereon, for so long as the defendant has an obligation for support of such minor children.
TAX EXEMPTION
The defendant shall be entitled to claim the minor children as dependents for federal and state income tax purposes provided he is current with child support payments as of December 31.
COUNSEL FEES
Each of the parties shall be responsible for their own counsel fees. CT Page 7944
Grogins, J.